FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

2010 FEB -5 PM 2: 29

STEPHEN R. LUDWIG, CLERK
U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

| | |
|---|---|
| TRAVIS MEDINA AND SARAH MEDINA, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| JOSEPH A. GARRETSON, ROBIN W. HUNT, | ) |
| LANE K. MILLER, | ) |
| FT. WAYNE MORTGAGE CORPORATION, | ) |
| FORT WAYNE TITLE, INC., | ) |
| FREEDOM FINANCIAL MORTGAGE CORP., | ) |
| FLAGSTAR CAPITAL CORPORATION d/b/a | ) |
| FLAGSTAR BANK, FLAGSTAR INTERMEDIATE) | |
| HOLDING COMPANY d/b/a FLAGSTAR BANK, | ) |
| STEWART TITLE COMPANY d/b/a STEWART | ) |
| TITLE GUARANTY COMPANY, | ) |
| | ) |
| Defendants. | ) |

1 : 10 C V 0 4 0 9   RL

## VERIFIED COMPLAINT AND JURY DEMAND

COME NOW Plaintiffs, Travis Medina and Sarah Medina, by counsel, Carson Boxberger

LLP, and for their cause of action against Defendants, allege and say as follows:

### JURISDICTION AND PARTIES

1.      Plaintiffs, Travis Medina and Sarah Medina ("Medinas") reside at 10128

Coverdale Road, Fort Wayne, Indiana 46809-9759 ("Premises") and are citizens of Indiana.

2.      Freedom Financial Mortgage Corp. ("FFMC") is a corporate citizen of Indiana

with its principal place of business at 6615 Brotherhood Way, Suite A, Fort Wayne, Indiana

46825.

3.      Robin W. Hunt ("Hunt"), individually and as President of FFMC, 6615

Brotherhood Way, Suite A, Fort Wayne, Indiana 46825, is a resident and citizen of Indiana.

4.     Ft. Wayne Mortgage Corporation ("FWMC") is a corporate citizen of Indiana with its principal place of business at 8321 Illinois Road, Fort Wayne, Indiana 46804.

5.     Fort Wayne Title, Inc. ("FWT") is a corporate citizen of Indiana with its principal place of business at 3634 New Vision Drive, Fort Wayne, Indiana 46845.

6.     Lane K. Miller ("Miller"), individually and as Registered Principal Manager for FWMC, 8321 Illinois Road, Fort Wayne, Indiana 46804, is a resident and citizen of Indiana.

7.     Joseph A. Garretson ("Garretson"), individually and as Loan Originator for FWMC and FFMC, 6615 Brotherhood Way, Suite A, Fort Wayne, Indiana 46825, is a resident and citizen of Indiana.

8.     Flagstar Capital Corporation d/b/a Flagstar Bank ("Flagstar") is a corporate citizen of Michigan with its principal place of business at 5151 Corporate Drive, Troy, Michigan 48098.

9.     Flagstar Intermediate Holding Company d/b/a Flagstar Bank ("Flagstar") is a corporate citizen of Michigan with its principal place of business at 5151 Corporate Drive, Troy, Michigan 48098.

10.     Stewart Title Company d/b/a Stewart Title Guaranty Company ("Stewart") is a corporate citizen of Texas with its principal place of business at 1980 Post Oak Boulevard, Suite 800, Houston, Texas 77056.

11.     Jurisdiction of this Court is proper under 28 U.S. Code § 1331, in that, Plaintiffs allege Defendants violated various federal statutes.

12.     Venue is proper in this District under 28 U.S. Code § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this

jurisdiction and the property at issue, which is the subject of this action, is situated in this jurisdiction.

## FACTS COMMON TO ALL CLAIMS

13.     On March 31, 2009, the staff of the Indiana Secretary of State ("SOS"), Securities Division ("Division") filed a Petition for Order of Summary Revocation and to Cease and Desist against FWMC and Garretson for alleged violations of the Indiana Loan Broker Act.  (Exhibit "A", ¶ 1).

14.     The SOS, Indiana Securities Commissioner ("Commissioner") issued an Order of Summary Revocation and to Cease and Desist against FWMC and Garretson on the same day, summarily revoking the license of FWMC, license no. 129800. (Exhibit "A", ¶ 1).

15.     On April 3, 2009, the license of FWMC was revoked by the Commissioner. (Exhibit "A", ¶ 2).

16.     On September 3, 2009, the Commissioner issued an Order against FWMC and Garretson and ordered FWMC and Garretson to be permanently barred from acting as loan brokers and/or originators in the State of Indiana.  (Exhibit "B".)

17.     From on or about December 9, 2008 to April 2, 2009, Lane K. Miller ("Miller") was the Registered Principal Manager for FWMC.  Miller's registration as a Principal Manager became inactive upon the revocation of FWMC's license on April 3, 2009. (Exhibit "A", ¶ 4).

18.     On or about April 15, 2009, the  SOS filed an Administrative Complaint against Miller, alleging that, as the FWMC Principal Manager, he failed to properly supervise an employee of FWMC in violation of Ind. Code § 23-2-5-10(c)(8).  On the same date, the Commissioner issued an Order to Show Cause as to why Miller's Principal Manager Registration should not be revoked. (Exhibit "A", ¶ 5).

3

19.     On or about September 16, 2009, Miller became registered as a Principal Manager of FFMC. From on or about April 29, 2009 to on or about August 19, 2009, Miller engaged in loan origination activities on behalf of FFMC, although his registration as an Originator and/or Principal Manager was not active from April 3, 2009 to September 15, 2009, in violation of Ind. Code § 23-2-5-4(b) and in violation of Ind. Code § 23-2-5-10(c)(6)(B).  (Exhibit "A", ¶¶ 7 and 8).

20.     On or about June 23, 2004, the Medinas purchased the Premises with a mortgage loan from Citi Mortgage, loan no. 1119910474-3 ("Citi Loan").

21.     On or about March of 2009, the Medinas sought to refinance the Premises because the Medinas desired to have another child, and they wanted to reduce their monthly expenses, including their mortgage payments.

22.     The Medinas contacted Garretson who arranged for them to apply for a loan to refinance the Premises through FWMC and FFMC.

23.     Garretson and FWMC acted as sales agent for FFMC in originating the loan for the Medinas to refinance the Premises.  FWT acted as sales agent for Stewart.

24.     Garretson represented, assured, and promised the Medinas that he would, as was his fiduciary duty and part of the refinance transaction, pay off the Citi Loan with the proceeds of the loan he was originating with FWMC and FFMC.

25.     On or about July 7, 2009, the Medinas closed on a loan with FFMC, loan no. 502621512 ("Loan") (Exhibit "C"), which included a Promissory Note in the principal amount of $186,400.00, a mortgage on the Premises to secure repayment of the Promissory Note, and associated documents relating thereto (the Promissory Note, Mortgage, and related documents are collectively referred to herein as the "Loan Documents" and attached as Exhibit "D").

According to U.S. Department of Housing and Urban Development Form No. OMB NO. 2502-0065 (Exhibit "E"), in connection with originating and closing the Loan, the Medinas paid a total of $3,495.27 as described below:

    a. Loan origination fee to Flagstar: $325;
    b. Appraisal fee: $350;
    c. Processing fee to FFMC: $400;
    d. Administration fee to Flagstar: $650;
    e. Tax service fee to First American Re: $69;
    f. Flood certification fee to Flagstar: $8;
    g. Broker premium to FFMC: $1.86;
    h. Interest from 7/14/09 to 8/1/09: $459.62;
    i. Hazard insurance: $189.51;
    j. County taxes: $808.85;
    k. Settlement foreclosing fee to FWT.: $150;
    l. Title insurance, FWT: $300;
    m. Courier fee, FWT: $30;
    n. Wire fee, FWT: $15;
    o. TIEFF fee, Stewart: $5; and
    p. Recording fee: $65.

26. On behalf of FFMC, FWMC, and Flagstar, Garretson directed the Loan proceeds to his title company, FWT, under the pretense that he would use the Loan proceeds to payoff the Citi Loan and any other necessary fees associated with closing the Loan.

27. Garretson, on behalf of himself and FFMC, FWMC, and FWT did not apply the Loan proceeds toward the Citi Loan as represented and required by the parties. Instead, these Defendants kept the $186,400.00 of Loan proceeds and converted the money to their own use. Unbeknownst to the Medinas, these Defendants surreptitiously made monthly payments on the Citi Loan so that the Medinas would be unaware that the Defendants had converted the Loan proceeds.

28. The Medinas subsequently discovered that their Citi Loan had not been paid off when they received information from Citi Mortgage that their Citi Loan was still active.

29.    The Medinas contacted Garretson to inquire as to why the Citi Loan had not been paid off, whereupon Garretson provided the Medinas with a series of fabrications and misrepresentations attempting to cover-up the Defendants' theft of the Loan proceeds.

30.    Upon the Medinas' final demand of Garretson and the Defendants to pay off the Citi Loan, Garretson prepared a bank check purporting to pay off the Citi Loan (*see* Exhibit "F"), representing to the Medinas that the Citi Loan had been paid by the Defendants. When the check was presented for payment, it was denied for insufficient funds.

31.    Ultimately, the Medinas paid to Defendants certain fees in exchange for Defendants' representations and promises that the Medinas' Citi Loan would be paid off and refinanced. However, the Medinas received nothing of value from the closing of the Loan.

32.    Under Indiana law, contracts induced by fraud are voidable, and Ind. Code § 26-1-3.1-203 dictates that a transferee cannot acquire rights of a holder in due course by a transfer directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

33.    On or about September 1, 2009, FFMC assigned, sold, and/or transferred the Loan Documents to Flagstar under the Loan. Under Indiana law, Flagstar, as transferee/assignee, acquired no greater rights in the Loan Documents than the rights held by FFMC, as transferor/assignor.

34.    Prior to funding the Loan, Flagstar made no effort to vet the registration or license of Garretson, Hunt, Miller, FFMC or FWMC, which had previously been suspended by the Commissioner for various violations of the Indiana Loan Broker Act, Ind. Code § 23-2-5 *et seq.*

35. The Medinas made monthly mortgage payments to Flagstar under the Loan until the Medinas became aware that the Defendants had not paid off the Citi Loan and were unable and unwilling to do so.

36. On or before July 9, 2009, Stewart issued title insurance on the Premises and sent a letter to Flagstar insuring and declaring that upon funding of the Loan, the Premises would be free of prior mortgages, liens, and encumbrances, and guaranteed Flagstar that the Citi Loan would be paid off and that Flagstar would have a first position secured interest in the Premises.

37. Stewart was aware of Garretson's activities with FWMC, FFMC and FWT and that Garretson's license to originate loans had been revoked. Stewart never informed Flagstar or the Medinas of the facts or circumstances relating to Garretson's illegal behavior, nor did Stewart inform Flagstar or the Medinas that it was no longer guaranteeing the proper application of the Loan proceeds.

38. On or about December 1, 2009, the Medinas notified Stewart that FWMC, FFMC, Flagstar, and FWT failed to pay off the Citi Loan and that the Citi Mortgage remained on the title to the Premises and made claim of Stewart under its title insurance policy (Exhibit "G"). Stewart has since taken no action with respect to rectifying this matter.

39. Garretson, FWMC, FFMC and FWT had the fiduciary duty to use the Loan proceeds to pay off the Citi Loan in its entirety. Garretson, FWMC, FFMC, and FWT materially profited from converting the Loan proceeds for their own use.

40. Flagstar materially profited from issuing the Loan proceeds to Garretson, FWMC, FFMC, and FWT. Despite being aware that the Loan Documents were procured by fraudulent representations and, as a result, are voidable and unenforceable, Flagstar is still pursuing the Medinas on the Loan and has taken no action to rectify this matter.

7

41.     Flagstar has furnished information relating to the Medinas to credit reporting agencies. (Exhibit "**H**"). Although the Medinas have disputed/dispute the completeness and accuracy of the information provided, Flagstar has failed to notify the credit reporting agency that the Medinas have disputed/dispute the furnished information.

42.     Working individually and in concert, Garretson, Miller, FWMC, FWT, and FFMC comprised, constituted and created an enterprise (the "Enterprise") within the meaning and intent of Title 18 U.S. Code § 1961 *et seq.*

43.     The members of the Enterprise all materially and monetarily gained through their activities in originating, processing, and issuing the Loan on the Premises. The Enterprise used both the U.S. Mail and Wire services across Indiana state lines in order to effectuate and accomplish the origination and issuance of the Loan.

44.     When the Medinas learned that the Citi Loan was not paid off from the proceeds of the Loan, and subsequently learned that Flagstar would not release its mortgage and Stewart would not pay under the title insurance policy, Sarah Medina experienced heightened levels of stress and elevated cortisol levels in her body, which resulted in a miscarriage of her first-term pregnancy.

45.     On or about February 1, 2009, Garretson pleaded guilty to conversion or misappropriation of title insurance escrow funds, corrupt business influence, and unlawful loan origination activities. (Exhibit "**I**"). As a result of Garretson's guilty plea, the Medinas' burden on Counts I, II, IV, V, VIII, IX, X, XI, XII, XIII, XIV, XV, XIX, and XX against Garretson has been met.

8

## COUNT I
## RACKETEERING INFLUENCED CORRUPT ORGANIZATION VIOLATIONS

46.    The Medinas hereby re-allege and incorporate paragraphs 1 through 45 of this Complaint as though fully set forth herein.

### Relevant Statutes

47.    At all times relevant to this Complaint, there was in full force and effect in the United States of America, a certain statute, namely the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S. Code § 1961, *et seq.*

48.    At all times relevant to this Complaint there was in full force and effect in the United States certain statutes commonly referred to as the Mail and Wire Fraud Statutes, 18 U.S. Code §§ 1341, 1343, and 1346.

### The Racketeering Enterprise

49.    The racketeering enterprise includes the legal entity Garretson, Miller, FWMC, FWT, and FFMC (hereinafter, collectively "Enterprise" or "RICO Defendants"), and the association-in-fact of its various members, shareholders, and employees.

50.    The Enterprise existed and exists to use monies gained through racketeering activities to further profit and maximize the income of the RICO Defendants and of the various and controlling members of the RICO Defendants.

51.    The Enterprise affected and affects interstate commerce as follows:

   a.  By conducting its affairs across state lines;

   b.  The Enterprise, in the regular course of business, utilized and utilizes the mails of the U.S. Postal Service to transmit information between its agents and communicate with the Medinas/victims; and

9

c. The Enterprise utilized and utilizes the means of interstate telephone calls across state lines in the regular course of business to communicate among its agents and various prospective victims.

## Racketeering Activity

52. Garretson and Miller, through their control of FWMC and FWT, violated 18 USCA § 1962(c) by conducting the defendants' affairs through a pattern of racketeering activity as defined in 18 USCA § 1961(1)(B), consisting of acts of mail and wire fraud in violation of 18 USCA §§ 1341, 1343, and 1346, and in violation of Indiana law. Specifically, the defendants devised a scheme or artifice to defraud the Medinas, that is, to obtain the Medinas' money by false or fraudulent pretenses, representations, and/or promises, and placed in the United States Post Office mail and knowingly caused to be delivered by U.S. mail to the Medinas, false documentation and written representations regarding the mortgage of the Premises, the Promissory Note as a "security" thereof, and to further such fraud upon the Medinas.

53. The pattern of racketeering activity is further defined and described below.

## The Pattern of Racketeering Activity

54. The Enterprise engaged in a scheme or artifice to defraud the Medinas by using mail fraud and wire fraud to profit from the Medinas as victims of their scheme. The Enterprise continues to profit from the scheme to defraud by using the Medinas' funds to further profit from their attempts to induce additional victims to submit to the RICO Defendants' mortgage fraud scheme. The Defendants' pattern of activity is continuing and related to past schemes involving mortgages within and outside of Indiana, and the Enterprise will continue in the future to acquire and/or attempt to acquire illegal gains in violation of 18 USCA § 1962(c).

### Defendants' Conduct and Participation in Racketeering Enterprise

55.     The RICO Defendants operated, conducted and participated in the operation of the Enterprise.

56.     The predicate acts of racketeering activity described above are all related in that the individual RICO Defendants, acting through the Enterprise, have conducted these criminal acts of fraud to obtain monies and profits for the Enterprise which it would not have acquired by lawful means.

57.     The predicate acts are continuous and will continue in the future.

58.     The individual RICO Defendants comprising the Enterprise employ the predicate acts of racketeering activity as a regular method of conducting business, using fraud whenever the opportunity presents itself on whomever it encounters.

59.     The RICO Defendants have a history of using the proceeds of current operations and existing assets to finance the expansion of the Enterprise.

60.     Each RICO Defendant was a necessary and integral part of the scheme to defraud the Medinas and each played a role in the operation and control of the scheme defrauding the Medinas.

WHEREFORE, the Medinas, by counsel, pray this Court enter a judgment against the RICO Defendants, jointly and severally, in an amount which will compensate the Medinas for their damages, treble damages pursuant to 18 USCA § 1964(c), for the costs of this action, for prejudgment and post-judgment interest, for reasonably attorney's fees pursuant to 18 USCA § 1964(c), and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

## COUNT II
## BREACH OF EXPRESS CONTRACT

61.     The Medinas hereby re-allege and incorporate paragraphs 1 through 60 of this Complaint as though fully set forth herein.

62.     Defendants' actions, as described in the preceding paragraphs of this Complaint, constitute breach of express contract and the expressed and written purpose of the Loan, Loan Documents, and title insurance policy.

WHEREFORE, the Medinas, by counsel, pray this Court enter judgment against the Defendants, jointly and severally, in an amount which will compensate the Medinas for their damages, for the costs of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

## COUNT III
## BREACH OF CONTRACT (STEWART TITLE)

63.     The Medinas hereby re-allege and incorporate paragraphs 1 through 62 of this Complaint as though fully set forth herein.

64.     On or before July 9, 2009, Stewart issued title insurance and sent a letter to Flagstar insuring and declaring that upon funding of the Loan the Premises would be free of prior mortgages, liens, and encumbrances and guaranteed that the Citi Loan would be paid off. (Exhibit "J").

65.     If the Court finds that the Medinas lack privity to enforce the title insurance policy, the Medinas are, in the alternative, a third-party beneficiary to the policy issued by Stewart to Flagstar because Flagstar and Stewart intended to benefit the Medinas with the insurance policy, the insurance policy imposed a duty on Stewart in favor of the Medinas, and the performance of the terms of the title insurance policy rendered a direct benefit to the Medinas

intended by Flagstar and Stewart, namely assurance that upon the funding of the Loan, the Premises would be free of prior mortgages, liens, and encumbrances and a guarantee that the Citi Loan would be paid off from the Loan proceeds.

66.     Stewart had a duty to ensure that the Citi Loan would be paid off from the proceeds of the Loan.  Stewart breached that duty by negligently failing to detect that Citi Mortgage had recorded a prior mortgage on the Premises.  Stewart failed to properly research and vet the title to the Premises, and in breach of its agreement with the Medinas, denied the Medinas' valid claim on the title insurance policy.

67.     As a direct and proximate result of Stewart's breach, the Medinas have suffered pecuniary losses in an amount to be determined at trial but in no case, is that amount less than $189,895.27, which is the sum of $186,400.00, the proceeds from this loan, plus $3,495.27 paid by the Medinas to originate this loan.

WHEREFORE, the Medinas, by counsel, pray this Court enter a judgment against Stewart, in an amount which will compensate the Medinas for their damages, for the costs of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees, and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

### COUNT IV
### BREACH OF IMPLIED CONTRACT

68.     The Medinas hereby re-allege and incorporate paragraphs 1 through 67 of this Complaint as though fully set forth herein

69.     Defendants' actions, as described in the preceding paragraphs of this Complaint, constitute breach of implied contract and the intended purpose of the Loan and Loan Documents.

WHEREFORE, the Medinas, by counsel, pray this Court enter judgment against the Defendants, jointly and severally, in an amount which will compensate the Medinas for their

13

damages, for the costs of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

## COUNT V
## BREACH OF FIDUCIARY DUTY

70.    The Medinas hereby re-allege and incorporate paragraphs 1 through 69 of this Complaint as though fully set forth herein.

71.    Under Indiana law, the agency relationship is confidential and fiduciary, binding the agent to exercise the utmost good faith and due care when acting on behalf of the principle.

72.    As the Medinas' agents, Defendants failed to act in good faith and with due care while performing their duties in refinancing and insuring the title of the Premises.

73.    As a direct and proximate result of Defendants' breach of fiduciary duty, the Medinas have suffered pecuniary losses in an amount to be determined at trial but in no case, is that amount less than $189,895.27, which is the sum of $186,400.00, the proceeds from this loan, plus $3,495.27 paid by the Medinas to originate this loan.

74.    Defendants should be held liable to the Medinas for losses sustained as a result of defendants' failure to act in good faith and with due care.

WHEREFORE, the Medinas, by counsel, pray this Court enter judgment against the Defendants, jointly and severally, in an amount which will compensate the Medinas for their damages, for the costs of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

## COUNT VI
## BAD FAITH

75.    The Medinas hereby re-allege and incorporate paragraphs 1 through 74 of this Complaint as though fully set forth herein.

76.     As described in the preceding paragraphs of this Complaint, Stewart's unfounded refusal to pay the Medinas' claim under Stewart's title insurance constitutes a breach of its legal duty to deal fairly and in good faith with the Medinas, the third party intended beneficiaries of the title insurance contracts, and shows Stewart's ill will toward the Medinas.

77.     Stewart's bad faith has caused the Medinas to suffer a pecuniary loss in an amount to be determined at trial but in no case, is that amount less than $189, 895.27, which is the sum of $186,400.00, the proceeds from this loan, plus the $3,495.27 paid by the Medinas to originate the loan.

78.     The Medinas are therefore entitled to damages plus costs, reasonable attorney's fees, pre-judgment interest, and post-judgment interest, and punitive damages as a result of Stewart's unfounded breach of its duties and ill will toward Plaintiffs.

WHEREFORE, the Medinas, by counsel, pray this Court enter judgment against Stewart in an amount which will compensate the Medinas for their damages, for the cost of this action, punitive damages, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

### COUNT VII
### NEGLIGENT ISSUANCE OF TITLE INSURANCE

79.     The Medinas hereby re-allege and incorporate paragraphs 1 through 78 of this Complaint as though fully set forth herein.

80.     As part of its issuance of title insurance on the Premises, Stewart had the duty to ensure that the Citi Loan would be paid.

81.     By failing to properly research and vet the title to the Premises, and failing to detect the existence of the prior Citi Loan on the Premises, Stewart breached its duty to the Medinas when it issued title insurance and sent a letter to Flagstar insuring and declaring that

15

upon funding of the Loan, the Premises would be free of prior mortgages, liens, and encumbrances, and guaranteeing that the Citi Loan would be paid off and that Flagstar would have a first position secured interest in the Premises – despite the continued existence of the Citi Loan.

82.    As a direct and proximate result of Stewart's negligence, the Medinas have suffered pecuniary losses in an amount to be determined at trial but in no case, is that amount less than $189,895.27, which is the sum of $186,400.00, the proceeds from this loan, plus $3,495.27 paid by the Medinas to originate this loan.

WHEREFORE, the Medinas, by counsel, pray this Court enter a judgment against Stewart in an amount which will compensate the Medinas for their damages, for the costs of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees, and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

## COUNT VIII
## NEGLIGENCE

83.    The Medinas hereby re-allege and incorporate paragraphs 1 through 82 of this Complaint as though fully set forth herein.

84.    As described in the preceding paragraphs of this Complaint, Defendants Garretson, Miller, FWMC, FWT, FFMC, and Flagstar told, materially represented, and/or assured the Medinas that the proceeds/monies/funds of the Loan would be used to pay off the Citi Loan and to ensure that the Premises was free of encumbrances.

85.    These Defendants had the fiduciary duty to ensure the proceeds/monies/funds of the Loan would be used to pay off the Citi Loan and to ensure that the Premises was free of encumbrances. These Defendants negligently failed to perform these duties.

16

86.    As a direct and proximate result of these Defendants' negligence, the Medinas have suffered pecuniary losses in an amount to be determined at trial but in no case, is that amount less than $189,895.27, which is the sum of $186,400.00, the proceeds from this loan, plus $3,495.27 paid by the Medinas to originate this loan.

WHEREFORE, the Medinas, by counsel, pray this Court enter a judgment against Garretson, Miller, FWMC, FWT, FFMC, and Flagstar, jointly and severally, in an amount which will compensate the Medinas for their damages, for the costs of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees, and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

## COUNT IX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

87.    The Medinas hereby re-allege and incorporate paragraphs 1 through 86 of this Complaint as though fully set forth herein.

88.    Defendants' conduct described in this Complaint is extreme and outrageous and intentionally or recklessly caused severe emotional distress to the Medinas.  More specifically, the stress which resulted from Defendants' conduct throughout the course of dealings caused plaintiff, Sarah Medina, to miscarry on her pregnancy.

89.    Defendants are subject to liability under Indiana law for the Medinas' emotional distress.

WHEREFORE, the Medinas, by counsel, pray this Court enter judgment against the Defendants, jointly and severally, in an amount which will compensate the Medinas for their damages, for the cost of this action, punitive damages, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

17

## COUNT X
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

90.     The Medinas hereby re-allege and incorporate paragraphs 1 through 89 of this Complaint as though fully set forth herein.

91.     The Medinas sustained a direct physical impact by the negligence of Defendants, and, by virtue of that direct physical impact, sustained an emotional trauma which is serious in nature and of the kind and extent normally expected to occur in a reasonable person.

92.     The direct physical impact of Defendants' negligence, Sarah Medina's miscarriage, is sufficient to satisfy Indiana's modified impact rule regarding recovery for negligent infliction of emotional distress because the facts are such that the Medinas' mental anguish is not speculative, exaggerated, fictitious, or unforeseeable.

93.     The Medinas are entitled to maintain an action to recover for the emotional trauma which resulted from Defendants' negligence.

WHEREFORE, the Medinas, by counsel, pray this Court enter judgment against the Defendants, jointly and severally, in an amount which will compensate the Medinas for their damages, for the cost of this action, punitive damages, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

## COUNT XI
## FRAUD

94.     The Medinas hereby re-allege and incorporate paragraphs 1 through 93 of this Complaint as though fully set forth herein.

95.     As described in the preceding paragraphs of this Complaint, Defendants, Garretson, Miller, Hunt, FFMC, FWMC, and FWT materially represented to the Medinas that

18

the proceeds/monies/funds of the Loan would be used to pay off the Citi Loan. However, these Defendants did not pay off the Citi Loan. Instead, these Defendants converted the monies to their own use.

96.     These Defendants therefore, provided inaccurate and misleading representations to the Medinas with either knowledge that the representations were false or made with reckless disregard or ignorance of the falsity of the statements; and with the intent to deceive the Medinas in order to obtain from the Medinas proceeds/monies/funds from the Loan.

97.     But for the presentation of false and fraudulent information, the Medinas would not have mortgaged the Premises with FWMC, FFMC, and Flagstar under the Loan.

98.     The Medinas reasonably relied upon the representations of these Defendants.

99.     The Medinas' reliance proximately caused their injuries.

100.    These Defendants' actions constitute fraud in that their material misrepresentations of fact were false; made with knowledge of the falsity or in reckless ignorance of the falsity; relied upon by the Medinas; and were the proximate cause of the Medinas' damages.

101.    The Medinas are entitled to rescission of the Loan and Loan Documents as a result of these Defendants' fraudulent representations. The Medinas are also entitled to restitution of the money paid by the Medinas to these Defendants under the Loan and Loan Documents.

WHEREFORE, the Medinas, by counsel, pray this Court enter a judgment against Garretson, Miller, Hunt, FFMC, FWMC and FWT, jointly and severally, in an amount which will compensate the Medinas for their damages, for the cost of this action, for prejudgment and

19

post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

## COUNT XII
## CONSTRUCTIVE FRAUD

102.  The Medinas hereby re-allege and incorporate paragraphs 1 through 101 of this Complaint as though fully set forth herein.

103.  As described in the preceding paragraphs of this Complaint, Defendants, Garretson, Miller, Hunt, FFMC, FWMC, FWT, and Flagstar materially represented to the Medinas that proceeds/monies/funds of the Loan would be used to pay off the Citi Loan.

104.  These Defendants owed the Medinas a duty due to the parties' relationship and violated their duty to the Medinas by making the deceptive material misrepresentations described above in the preceding paragraphs of this Complaint.

105.  The Medinas reasonably relied on these Defendants' deceptive assurances, representations, warranties, and advertisements about the mortgage on the Premises and their intended use of the proceeds/monies/funds from the Loan.

106.  After the July 9, 2009 closing of the Loan, when the Medinas inquired about the status of Citi Loan, these Defendants also remained silent when they had a duty to speak to or inform the Medinas that the Citi Loan had not been paid.

107.  The Medinas mortgaged the Premises with the Loan in reliance upon these Defendants' deceptive representations with the expectation that the proceeds of the Loan would be used to pay the Citi Loan. However, the proceeds/monies/funds from the Loan were not used to pay the Citi Loan. Instead, these Defendants converted the monies to their own use. The use of the Loan to pay off the Citi Loan was both a material condition and term and was the motivation for the Medinas to mortgage the Premises with the Loan. Because these Defendants

20

knew or should have known that the Loan would not be used to pay the Citi Loan, these Defendants therefore, constructively defrauded the Medinas.

108.    As a result of these Defendants' professional status as mortgage agents, brokers and/or bankers, Defendants had an advantage over the Medinas as experts in their field. The Medinas reasonably relied upon these Defendants' purported expertise as to how the proceeds from the Loan would be applied. Instead, the funds were misappropriated and misused. These Defendants therefore, falsely obtained the proceeds/monies/funds from the Loan at the Medinas' expense.

109.    As a direct and proximate result of Defendants' constructive fraud, the Medinas have suffered pecuniary losses in an amount to be determined at trial but in no case, is that amount less than $189,895.27, which is the sum of $186,400.00, the proceeds from this loan, plus $3,495.27 paid by the Medinas to originate this loan.

WHEREFORE, the Medinas, by counsel, pray this Court enter a judgment against Garretson, Miller, Hunt, FFMC, FWMC, FWT, and Flagstar in an amount which will compensate the Medinas for their damages, for the costs of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

## COUNT XIII
## DECEPTION

110.    The Medinas hereby re-allege and incorporate paragraphs 1 through 109 of this Complaint as though fully set forth herein.

111.    Defendants' actions as described in the preceding paragraphs of this Complaint, constitute deception under Indiana Code § 35-43-5-3, because Defendants made false or

21

misleading written statements with the intent to obtain the proceeds/monies from the Loan, a mortgage on the Premises, and/or the title insurance payments.

112.    As a direct and proximate result of Defendants' deception, the Medinas have suffered pecuniary losses in an amount to be determined at trial but in no case, is that amount less than $189,895.27, which is the sum of $186,400.00, the proceeds from this loan, plus $3,495.27 paid by the Medinas to originate this loan.

113.    Pursuant to Indiana Code § 34-24-3-1 and Indiana Code § 35-43-5-3, the Medinas are entitled to treble damages, costs and reasonable attorney's fees from Defendants for their deception.

WHEREFORE, the Medinas, by counsel, pray this Court enter judgment against the Defendants, jointly and severally, in an amount which will compensate the Medinas for their damages, for the costs of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

## COUNT XIV
## CONVERSION

114.    The Medinas hereby re-allege and incorporate paragraphs 1 through 113 of this Complaint as though fully set forth herein.

115.    Garretson, Miller, FFMC, and FWMC's actions, as described in the preceding paragraphs of this Complaint, constitute conversion under Indiana Code § 35-43-4-3.

116.    These Defendants knowingly and/or intentionally exercised and exerted an unauthorized control over the $186,400.00 from the Loan and converted the money to their own use.

117.    As a result, the Citi Loan was not paid off, leaving the Medinas with two mortgages on the Premises.

22

118. As a direct and proximate result of Garretson's, Miller's, FFMC's, and FWMC's conversion, the Medinas have suffered pecuniary losses in an amount to be determined at trial but in no case, is that amount less than $189,895.27, which is the sum of $186,400.00, the proceeds from this loan, plus $3,495.27 paid by the Medinas to originate this loan.

119. Pursuant to Indiana Code §34-24-3-1 and Indiana Code §35-43-4-3, the Medinas are entitled to treble damages, costs, and reasonable attorney's fees from Garretson, Miller, FFMC, and FWMC for their conversion of the Medinas' funds.

WHEREFORE, the Medinas, by counsel, pray this Court enter judgment against Garretson, Miller, FFMC, and FWMC, jointly and severally, in an amount which will compensate the Medinas for their damages, treble damages, for the cost of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

## COUNT XV
### THEFT

120. The Medinas hereby re-allege and incorporate paragraphs 1 through 119 of this Complaint as though fully set forth herein.

121. Defendants', Garretson, Miller, FFMC, and FMC, actions as described in the preceding paragraphs of this Complaint, constitute theft as defined in Indiana Code § 35-43-5-1. These Defendants knowingly or intentionally exerted unauthorized control of the proceeds/monies/funds from the Loan with the intent to deprive the Medinas of those funds or the use of those funds within the meaning and intent of Indiana Code §35-43-4-2(a).

122. As a direct and proximate result of Garretson's, Miller's, FFMC's, and FWMC's theft, the Medinas have suffered pecuniary losses in an amount to be determined at trial but in no

23

case, is that amount less than $189,895.27, which is the sum of $186,400.00, the proceeds from this loan, plus $3,495.27 paid by the Medinas to originate this loan.

123.    The Medinas are also entitled to treble damages, costs, and reasonable attorney fees from these Defendants for theft of those funds under Indiana Code § 34-24-3-1.

WHEREFORE, the Medinas, by counsel, pray this Court enter judgment against Garretson, Miller, FFMC, and FWMC, jointly and severally, in an amount which will compensate Plaintiffs for their damages, treble damages, for the cost of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

## COUNT XVI
## SLANDER OF TITLE

124.    The Medinas hereby re-allege and incorporate paragraphs 1 through 123 of this Complaint as though fully set forth herein.

125.    Flagstar has made unfounded claims concerning ownership of the mortgage it holds on the Medinas' property, resulting in financial loss to the Medinas.

126.    The statements made by Flagstar were untrue and published with knowledge that they were false or with reckless disregard as to whether they were false or not.

127.    As a direct and proximate result of Flagstar's slanderous claims, the Medinas have suffered pecuniary losses in an amount to be determined at trial but in no case, is that amount less than $189,895.27, which is the sum of $186,400.00, the proceeds from this loan, plus $3,495.27 paid by the Medinas to originate this loan.

WHEREFORE, the Medinas, by counsel, pray this Court enter judgment against Flagstar in an amount which will compensate the Medinas for their losses, for the costs of this action,

compensatory damages, for reasonable attorneys fees, for punitive damages, and for all other just and proper relief the premises.

## COUNT XVII
## REPORTING INFORMATION WITH ACTUAL KNOWLEDGE OF ERRORS

128.    The Medina's hereby re-allege and incorporate Paragraphs 1 through 127 of this Complaint as though fully set forth herein.

129.    15 U.S. Code § 1681 *et seq.*  is known as the Fair Credit Reporting Act ("FCRA").

130.    Under 15 U.S. Code § 1681s-2(a)(1)(A), a person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.

131.    The term "reasonable cause to believe that the information is inaccurate" means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information.  15 U.S. Code § 1681s-2(a)(1)(B).

132.    Under 15 U.S. Code § 1681s-2(a)(3), "[i]f the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer."

133.    Flagstar, prior to releasing the Loan proceeds to Garretson, FFMC, and FWMC, made no effort to vet the registration or license of FFMC or FWMC, which had previously been suspended by the Commissioner for various violations of the Indiana Loan Broker Act, Ind. Code § 23-2-5 *et seq.*  At the time the Loan proceeds were released, such information was public knowledge, and Flagstar had subsequently become aware of the suspensions.

134.   Flagstar materially profited from issuing the Loan Proceeds to Garretson, FWMC, FFMC, and FWT.  Despite being aware that the Loan Documents were procured by fraudulent representations and, as a result, are voidable and unenforceable, Flagstar is still pursing the Medinas on the Loan and has taken no action to rectify this matter.

135.   In fact, Flagstar made it clear to the Medinas that it will not place the loan in forbearance or permanently suspend adverse credit reporting or foreclosure proceedings on the Loan.

136.   Although Flagstar has agreed to refrain from any adverse credit reporting while it conducts its investigation of this matter, Flagstar has still furnished information relating to the Medinas to credit reporting agencies.  (Exhibit "**H**").

137.   Under the FCRA, Flagstar knows or has reasonable cause to believe that the information reported is inaccurate.

138.   Because Flagstar knows or has reasonable cause to believe that the information is inaccurate, Flagstar is prohibited from furnishing any information relating to the Loan to any consumer reporting agency.

139.   Flagstar's reporting of the Loan on the Medinas' credit constitutes a violation of the FCRA.

140.   As a direct and proximate result of Flagstar's inaccurate reporting, the Medinas have suffered pecuniary  losses in an amount to be determined at trial but in no case, is that amount less than $189,895.27, which is the sum of $186,400.00, the proceeds from this Loan, plus $3,495.27 paid by the Medinas to originate this Loan.  In addition, under 15 U.S. Code § 1681n(A)(2) and (3), the Medinas are entitled to such amount of punitive damages as the Court may allow, the costs of this action, and reasonable attorney's fees as determined by the Court.

141.    In the alternative, if the Court finds that Flagstar did not know or have reasonable cause to believe that the information reported was inaccurate, Flagstar still, with knowledge that the Medinas disputed the completeness or accuracy of the information provided to the credit agency, failed to furnish the information to the consumer reporting agencies with notice that such information was disputed by the Medinas. (Exhibit "**H**").

142.    As a direct and proximate result of Flagstar's failure to provide notice that the debt was disputed, the Medinas have suffered pecuniary losses in an amount to be determined at trial but in no case, is that amount less than $189,895.27, which is the sum of $186,400,00, the proceeds from this Loan, plus $3,495.27 paid by the Medinas to originate this Loan.

143.    The Medinas are entitled to damages plus costs, reasonable attorney's fees, prejudgment interest, post-judgment interest, and punitive damages as a result of Flagstar's violations of the FCRA.

WHEREFORE, the Medinas, by counsel, pray this Court enter judgment against Flagstar, in an amount which will compensate the Medinas for their damages, for the costs of this action, punitive damages, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

## COUNT XVIII
## DECLARATORY JUDGMENT (STEWART TITLE)

144.    The Medinas hereby re-allege and incorporate paragraphs 1 through 143 of this Complaint as though fully set forth herein.

145.    As described in the preceding paragraphs of this Complaint, on or before July 9, 2009, Stewart issued title insurance on the Premises and sent a letter to Flagstar insuring and declaring that upon funding of the Loan, the Premises would be free of prior mortgages, liens,

and encumbrances, and guaranteeing Flagstar that the Citi Loan would be paid off and that Flagstar would have a first position secured interest in the Premises.

146. Upon funding of the Loan, the Premises was not free of mortgages, liens, and encumbrances, the Citi Loan was not paid off, and Flagstar did not have a first position secured interest in the Premises because Stewart negligently failed to ensure that the Citi Loan had been paid off prior to issuing its title insurance and prior to July 9, 2009, the date of closing on the Loan.

147. Stewart was aware of Garretson's activities with FWMC, FFMC, and FWT and that Garretson's License to originate loans had been revoked. Stewart never informed the Medinas of the facts or circumstances relating to Garretson's illegal behavior nor did Stewart inform the Medinas that it was no longer guaranteeing the proper application of the Loan proceeds.

148. On or about December 1, 2009, the Medinas notified Stewart that FWMC, FFMC, Flagstar, and FWT failed to pay off the Citi Loan and that the Citi Mortgage remained on the title to the Premises and made claim of Stewart under its title insurance policy. Stewart has not taken any action to rectify this matter.

149. Under Ind. Code § 34-14-1-1 *et seq.*, 28 U.S. Code § 2201, and Fed. R. Civ. P. 57, the Medinas seek a determination by the Court of this actual controversy concerning coverage under the title insurance.

WHEREFORE, the Medinas, by counsel, pray this Court enter a declaratory judgment against Stewart, holding that the Medinas are entitled to coverage under the title insurance policy with Stewart, and enter judgment against Stewart in an amount which will compensate the Medinas for their damages, for the cost of this action, for prejudgment and post-judgment

28

interest, for reasonable attorney's fees and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

**COUNT XIX**
**DECLARATORY JUDGMENT (FLAGSTAR)**

150.    The Medinas hereby re-allege and incorporate paragraphs 1 through 149 of this Complaint as though fully set forth herein.

151.    As described in the preceding paragraphs of this Complaint, Garretson, Hunt, Miller, FFMC, FWMC, and FWT made material misrepresentations concerning the Loan Documents, and the actions taken by these Defendants constitute fraud.

152.    Because the Loan Documents were procured and induced by fraud, the Loan Documents are voidable under Indiana law.

153.    On or about September 1, 2009, FFMC assigned, sold, and/or transferred the Loan Documents to Flagstar under the Loan.  The fraud and illegality engaged in by Garretson, Hunt, Miller, FFMC, FWMC, and FWT affected the assignment, sale, and transfer of the Loan Documents, and Flagstar acquired no greater rights in the Loan Documents than the rights held by these Defendants.

154.    Following the assignment, sale, and/or transfer of the Loan Documents to Flagstar, the Loan Documents remained voidable, and Flagstar was not a holder in due course of the Loan Documents because the transferee, FFMC, and its agents engaged in fraud and illegality affecting the Loan Documents.

155.    On or about December 1, 2009, the Medinas exercised their right to void the mortgage by demanding that Flagstar release its mortgage on the Premises and close their account. (Exhibit "**K**").

156.    Despite being aware of the foregoing, and despite the Medinas' demands to the contrary, Flagstar refuses to release its voidable and unenforceable mortgage on the Premises, hold the Loan in forbearance, or agree to completely suspend adverse credit reporting and foreclosure proceedings.

157.    The Medinas are entitled to rescission of the Loan and Loan Documents as a result of the fraudulent representations.    The Medinas are also entitled to restitution of the money paid by the Medinas under the Loan and Loan Documents.

158.    Under 28 U.S. Code § 2201 and Fed. R. Civ. P. 57, the Medinas seek a determination by the Court of this actual controversy concerning the enforceability and validity of the Loan and Loan Documents.

WHEREFORE, the Medinas, by counsel, pray this Court enter a declaratory judgment against Flagstar, holding that the Loan and Loan Documents are not enforceable or valid and requiring Flagstar to release its lien on the Premises, and enter judgment against Flagstar in an amount which will compensate the Medinas for their damages, for the cost of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

## COUNT XX
## UNJUST ENRICHMENT

159.    The Medinas hereby re-allege and incorporate paragraphs 1 through 158 of this Complaint as though fully set forth herein.

160.    Defendants, Garretson, Miller, Hunt, FWMC, FFMC, and FWT have unfairly profited from the use of the proceeds/monies/funds from the Loan, Flagstar has unfairly profited from its mortgage on the Premises, and Stewart has unfairly profited from the payment it received to insure the title to the Premises.

30

161.    Defendants are unjustly enriched at the expense of the Medinas if Defendants do not return to the Medinas $189,895.27, which is the sum of $186,400.00, the proceeds from this loan, plus the $3,495.27 paid by the Medinas to originate the loan.

WHEREFORE, the Medinas, by counsel, pray this Court enter judgment against the Defendants, jointly and severally, in an amount which will compensate the Medinas for their damages, for the cost of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

## COUNT XXI
## PROMISSORY ESTOPPEL

162.    The Medinas hereby re-allege and incorporate paragraphs 1 through 161 of this Complaint as though fully set forth herein.

163.    If this Court finds that there is not a valid contract between the Medinas and Stewart, or that the Medinas are not third-party beneficiaries to the contract between Stewart and Flagstar, in the alternative, the doctrine of promissory estoppel provides the Medinas with an avenue for relief.

164.    Stewart made a promise to the Medinas that the Premises, upon funding of the Loan, would be  free of encumbrances, mortgages, and liens, and guaranteed that the Citi Loan would be paid off.  Stewart's promise was made with the expectation that the Medinas would rely upon it.  Stewart's promise induced reasonable reliance by the Medinas and the Medinas materially altered their position in reliance upon Stewart's promise.  Stewart's promise was of a definite and substantial nature, and injustice can only be avoided by enforcement of the promise.

165.    As a direct and proximate result of Stewart's breach, the Medinas have suffered pecuniary losses in an amount to be determined at trial but in no case, is that amount less than

31

$189,895.27, which is the sum of $186,400.00, the proceeds from this loan, plus $3,495.27 paid by the Medinas to originate this loan.

166.    The Medinas are therefore, entitled to damages plus costs, reasonable attorneys fees, pre-judgment interest and post-judgment interest as a result of their detrimental reliance upon Stewart's promise.

WHEREFORE, the Medinas, by counsel, pray this Court enter a judgment against Stewart, jointly and severally, in an amount which will compensate the Medinas for their damages, for the costs of this action, for prejudgment and post-judgment interest, for reasonable attorney's fees, and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

## COUNT XXII
### PUNITIVE DAMAGES

167.    The Medinas hereby re-allege and incorporate paragraphs 1 through 166 of this Complaint as though fully set forth herein.

168.    As described in the preceding paragraphs of this Complaint, the Defendants' acts and omission against the Medinas illustrate the Defendants' ill will toward the Medinas.

169.    The Medinas are therefore entitled to punitive damages.

WHEREFORE, the Medinas, by counsel, pray this Court enter judgment against the Defendants, jointly and severally, in an amount which will compensate the Medinas for their damages, for the cost of this action, punitive damages, for prejudgment and post-judgment interest, for reasonable attorney's fees and for all other just and proper relief in the premises under Fed. R. Civ. P. 54(c).

### JURY DEMAND

Plaintiffs demand trial by jury for all matters so triable under Fed. R. Civ. P. 38.

32

## <u>VERIFICATION</u>

I affirm under penalties of perjury that the foregoing representations are true to the best of my knowledge, information, and belief.

By: _____

Travis Medina

By: _____

Sarah Medina

Respectfully submitted,

**CARSON BOXBERGER LLP**

_____

Kevin P. Podlaski #25168-02

J. Blake Hike #28601-02

*Attorney for Plaintiffs*

1400 One Summit Square

Fort Wayne, Indiana 46802

Telephone: (260) 423-9411

F:\M\Medina, Travis & Sarah 23,801\COMPLAINT JVS mu.doc